Argued and submitted November 3, 1994, judgment of the Tax Court reversed and case remanded to the Tax Court for further proceedings January 27, reconsideration denied March 7, 1995

Jim GANGLE,
Lane County Assessor,
*Respondent,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Respondent,*

*and*

EVERGREEN UNION RETIREMENT
ASSOCIATION, INC.,
*Intervenor-Appellant.*

(OTC 3384; SC S41135)

887 P2d 784

Carl N. Byers, Judge.

Larry J. Anderson, of Anderson & Clayton, Eugene, argued the cause for intervenor/appellant. With him on the briefs was Paul D. Clayton.

Eric S. De Freest, Lane County Office of Legal Counsel, Eugene, argued the cause and filed the brief for respondent Gangle.

James J. McLaughlin, Assistant Attorney General, Salem, waived appearance for respondent Department of Revenue.

FADELEY, J.

**FADELEY, J.**

The owner of Ya-Po-Ah Terrace Retirement Center (taxpayer), a 222-unit apartment building operated as a nonprofit home for the elderly, appeals a valuation decision of the Tax Court for the 1991-92 tax year. *Gangle v. Dept. of Rev.*, 13 OTR 10 (1994). The issue presented concerns the proper interpretation of a tax valuation statute, ORS 308.490. Specifically, taxpayer and the Tax Court disagree about whether ORS 308.490(2)(b) requires deduction of depreciation from gross income before completing a calculation of value under that statute.

ORS 308.490 provides, in part:

"(1) The Legislative Assembly finds that ordinary methods of determining the real market value[1] of real property, particularly by consideration of the cost of replacing a structure with a similar and comparable one of equivalent utility, are not appropriate with respect to property of nonprofit homes for elderly persons * * *. The Legislative Assembly declares that the benefits inherent in operation of these homes * * * justifies the use of criteria set out in subsection (2) of this section.

"(2) In determining the real market value of the property of a nonprofit home for elderly persons, operated by a corporation described in ORS 307.375, the county assessor shall not take into account considerations of replacement cost, but shall consider:

"(a) The amount of money or money's worth for which the property may be exchanged within a reasonable period of time under conditions in which both parties of the exchange are able, willing, and reasonably well informed.

"(b) The gross income that reasonably could be expected from the property if leased or rented to the public generally, *less* annual operating expenses, reserves for replacements and insurance, *depreciation* and taxes." (Emphasis added.)

Originally, the Lane County Assessor valued the property in question at $5,898,250 for the 1991-92 tax year. Taxpayer appealed, as required, to the state's Department of

---

[1] The pre-1991 version of the statute used the term "true cash value" instead of "real market value." That change was enacted by Oregon Laws 1991, chapter 459, section 138, but plays no part in the decision of this case.

Revenue (DOR), which decided that the statute entitled tax-payer to the "benefit of the depreciation deduction"[2] and set a lower real market value. Thereafter, the Assessor filed a complaint in the Tax Court, alleging that the real market value of the property was $4,277,500.

The Tax Court interpreted ORS 308.490 not to require any allowance for depreciation. Based on its inter-pretation of the statute, the Tax Court found that actual "annual net operating income for the subject property is $520,920." 13 OTR at 13. The Tax Court did not deduct any depreciation from gross income in arriving at "net operating income."[3] The Tax Court then established a capitalization rate (including the appropriate property tax rate for the year) at 13.822 percent[4] and established real market value at $3,770,000. *Ibid.*

In arriving at that valuation, the Tax Court inter-preted the following words of ORS 308.490(2) as *not* mandatory:

"[S]hall not take into account * * * replacement cost, but shall consider:

"(a)   The amount of money * * * for which the property may be exchanged * * *.

"(b)   The gross income that reasonably could be expected * * *, less * * * depreciation * * *."

That court thought that the legislature, in using the "less * * * depreciation" phrase, was merely making a suggestion about factors that may diminish value. Rather than inter-preting the statute as requiring a deduction for depreciation, the Tax Court concluded: "The legislature was not dictating a method of calculating value but simply indicating factors which diminish value. The statute directs the assessor to 'consider' depreciation." 13 OTR at 12. The Tax Court held

---

[2] DOR Opinion and Order 92-0883, p 7.

[3] That net income amount and, therefore, the resulting valuation, would have been proportionately less had depreciation been deducted. There is no dispute that $66,000 would be an appropriate amount for annual depreciation if such deprecia-tion is to be deducted.

[4] Even though no party suggested the specific capitalization rate set by and employed by the Tax Court, its accuracy has not been questioned or assigned as error by any party.

that the statute did not permit deducting any "accounting depreciation" from annual gross income when arriving at taxable value under the paragraph (b) approach.

On appeal from the Tax Court's ruling, taxpayer argues that ORS 308.490(2)(b) statutorily specifies a modified income approach to valuation for use with nonprofit homes for the elderly and that, under that modified approach, the statute requires that depreciation be deducted from the gross income of nonprofit homes for the elderly before a value may be determined for property tax purposes.

■    This court's task is to give the statute the meaning that the legislature intended and then apply it in this case. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). Ordinarily that meaning is derived directly from the text and context of the statute. *Id.* at 610-11. Applying that method to this case, we reverse the judgment of the Tax Court and remand the case to the Tax Court for further proceedings.

ORS 308.490 was the last of five sections of new substantive property tax law enacted by Oregon Laws 1969, chapter 587.[5] That Act established limited tax exemptions and detailed special methods of valuation for nonprofit homes for elderly persons.[6] Taxation of such homes is the subject of the Act. It is clear that the legislature intended that such homes not be taxed as other property in general is taxed but, instead, be taxed under the special provisions of the 1969 Act.

■    Deduction of depreciation is required by the plain language of ORS 308.490(2). The literal meaning of the "shall consider" phrase in subsection (2) is to require ("shall") the consideration of two discrete methods of determining value, namely (a) "[t]he amount of money * * * for which the property may be exchanged," and (b) "[t]he gross income that

---

[5] The remaining substantive sections of that 1969 Act, as amended from time to time, are codified as ORS 307.370 to 307.385. The 1969 Act directed that the last section, section 8, be placed in ORS chapter 308. Or Laws 1969, ch 587, § 7.

[6] The exemptions and valuation methods apply when the home is operated by a specified type of not-for-profit corporation, organized and operated for the purpose of furnishing permanent residential and other facilities primarily for elderly persons, as is now specified in ORS 307.375.

reasonably could be expected * * *, less [various listed expenses including] depreciation."

The verb "consider" is thus directed to the two approaches — market exchange and modified income — that are separately described in paragraphs (a) and (b) of the statute at issue in this case. It is not, as the Tax Court thought, directed to, nor is it adjacent to, the internal description of items to be deducted from "gross income" to determine net income found within the modified income approach in paragraph (b). In that paragraph, the deduction for depreciation is not simply to be "considered"; it is mandated as a part of the definition and determination of net annual income that is to be used to calculate property value under the modified income approach of that paragraph.

The foregoing review of text and context suffices to show the intended meaning of the statute. The Tax Court incorrectly read the relevant statute by misapplying the verb "consider" to the phrase "less * * * depreciation" so as to make that phrase optional, thereby depriving taxpayer of a deduction from annual income that the legislature intended such taxpayers to receive. All other things remaining the same, taxpayer's real market value, as described in the special statute, will be proportionally less after the statute is followed by deducting depreciation from gross income to arrive at the net income amount that will be used to calculate value. The deduction is yet to be made, and taxable value based on the resulting annual net income amount is yet to be calculated.[7]

The judgment of the Tax Court is reversed, and the case is remanded to the Tax Court for further proceedings.

---

[7] Because this case is remanded to the Tax Court to apply the statute as interpreted, we do not reach taxpayer's second assignment of error that is based on a more general statute.